No. 13,754.

TENSAS DELTA LAND COMPANY, LIMITED vs. C: & W. D. SHOLARS.

### SYLLABUS.

1.  Considering the mandatory requirement of Act 88 of 1888, parties to an act of conveyance of real property are not at liberty to dispense with the production of evidence of the payment of taxes, and notaries and other officials authorized to execute public acts are forbidden by law to pass any act importing the sale, transfer or exchange of real estate until there is produced the tax collector's receipt or certificate showing payment of State, parish and municipal taxes assessed against the same for three years next preceding the execution of the act.

2.  The notice of delinquency required to be given or mailed to the tax debtor is sacramental, and failure to give it vitiates all subsequent proceedings taken for the sale of the property to enforce payment of taxes.

3.  Deeds of sale made by collectors of taxes are required by law, both constitutional and statutory, to be received by courts in evidence as *prima facie* valid sales.

4.  But when there is evidence adduced sufficient to rebut this *prima facie* character of the deed, and to fatally imperil the presumption of regularity which attaches to the tax sale, there is thrown upon the party who holds under the tax title the burden of sustaining the latter by testimony *aliunde* the deed.

5.  In a matter of so much public importance as tax sales a record in writing in each case should be kept by tax-collectors of how and when, the manner, etc., of giving notice of delinquency to tax-debtors, and officially signed. And if this record does not make proof of its recitals, as does the return of the sheriff on a citation, it could be given that effect by legislation.

A PPEAL from the Sixth Judicial District, Parish of Ouachita— *Hall, J.*

*Hudson, Potts & Bernstein,* for Plaintiff, Appellant.

*Percy Sandel* for Defendants, Appellees.

*Stubbs & Russell* for C. D. and Mrs. W. A. Mathews, Warrantors, Appellees.

The opinion of the court was delivered by

BLANCHARD, J. The plaintiff company asserts ownership to the "Buck Baker" plantation, in the parish of Ouachita, containing 378.97 acres, and has instituted this petitory action to be decreed owner and to be placed in possession thereof.

Whether or not the company is entitled to recover depends on the validity of a tax adjudication made to the State of Louisiana by the sheriff and tax collector in June 1896.

The property was acquired by purchase by J. T. Bryant from Mathews and wife in March 1895, and the deed was duly registered in the conveyance records.

It (the property) was, therefore, properly assessed to Bryant for the taxes of 1895.

Bryant did not pay the taxes, and in February 1896, conveyed the property to S. C. Trimble for $5,500. Had the notary public before whom this act of sale was passed observed the law requiring production of evidence of payment of taxes before executing the deed, the present suit and all the trouble and expense incident to same would have been avoided.

Instead of requiring evidence of the payment of taxes, he inserted a provision to the effect that the parties to the act dispensed with the production of tax receipts showing payment of taxes.

In view of the public interest, we deem it advisable to say that, considering the mandatory requirement of Act 88 of 1888, parties to an act of conveyance of real property are not at liberty to dispense with the production of evidence of the payment of taxes, and that notaries are forbidden by the law to pass any act importing the sale, transfer or exchange of real estate until there is produced the tax collector's receipt or certificate showing payment of State, parish and municipal

taxes due on the same for three years next preceding the execution of the act.

Immediately upon his acquisition of the property Trimble conveyed it to C. D. Mathews, and again there was incorporated in the act a provision dispensing with the production of tax receipts.

In September following (1896) Mathews and wife conveyed it to C. and W. D. Sholars, defendants herein, and this act, too, purported to dispense with evidence of payment of taxes.

The Messrs. Sholars went into possession and this suit is brought against them.

Bryant having failed to pay the taxes on the property for 1895, the sheriff and tax collector proceeded to enforce payment.

The first requirement of the law (Art. 210 of the Constitution of 1879 and Sec. 50 *et seq.* of Act 85 of 1888) was the giving of notice, written or printed, to the tax debtor that his taxes on the property must be paid within twenty days, or that the property would be sold to enforce payment.

The tax collector is directed to commence giving these notices to delinquent tax payers on the 2nd of January of each year, and in the country parishes it suffices that the notice be sent by mail to the postoffice of the tax debtor, addressed to the latter.

Sec. 51, Act 85 of 1888.

On the 2nd of January 1896 and until the middle of February of that year Bryant was the owner of record of the property in question and was, therefore, the proper party to whom to give the notice.

Twenty days after mailing the notice, or as soon thereafter as practicable (the taxes not being meanwhile paid), the sheriff is required to proceed to advertise for sale the property thus delinquent.

Sec. 53 of Act 85 of 1888.

The property in dispute here, with other property delinquent in the matter of payment of taxes, appears to have been advertised for sale from the 23rd of May to the 27th of June 1896, and offered for sale for taxes on the latter day.

It appears, further, that no bid was offered for the property assessed to Bryant, and, in default of a purchaser, the same was adjudicated to the State as required by law.

Formal act of conveyance was made by the sheriff to the State following the adjudication.

From the State the property passed to the Tensas Basin Levee Dis-

trict by virtue of Act No. 77 of 1888 and deed from the auditor carrying the same into effect.

The commissioners of the Tensas Basin Levee District sold it, in November 1898, to the plaintiff company, and the present action is brought to vindicate the title thus acquired.

From an adverse judgment in the court below plaintiff prosecutes this appeal.

*Ruling*—One of the defenses ·set up· is that the State acquired no title to the property at the tax sale because the notice required by the Constitution and statutory law was not given to the tax debtor prior to the advertisement and sale of the property.

This notice is sacramental and failure to give it vitiates all subsequent proceedings taken for the sale of the property.

If, therefore, it should appear there was failure to give notice, the State acquired no title at the adjudication, and could and did convey none to her subsequent vendees.

The deed from the sheriff to the State contains the recital that the notice required by Act 85 of 1888 had been given and that all of the requirements of the statute leading up to the tax sale had been observed.

The Constitution of 1879 (Art. 210) and the Constitution of 1898 (Art. 233) direct that all deeds of sale made by collectors of taxes shall be received by courts in evidence as *prima facie* valid sales.

Giving that effect to the deed in question here, it remains to be seen whether or not the testimony as to want of notice adduced by defendants rebuts the *prima facie* character of this deed and over-throws the presumption of regularity which attaches to the tax sale. ·

The tax collector who initiated the proceedings went out of office before the day of the tax sale.

If notice to Bryant was given at all, it was given by ·him. He inserted the advertisement of the property for sale for taxes on May 23rd, 1896, and surrendered office to his successor on June 1st following.

The new sheriff officiated at the sale on June 27th and executed the deed to the State. He knows nothing about the antecedent steps taken by his predecessor.

The latter is dead and his evidence is lost to the case.

His deputy sheriff was called to the stand by defendants and testified

that the only record kept in the sheriff's office of demand and notice to a delinquent tax debtor was a mere check mark made opposite his name on the tax rolls.

It is unfortunate if this practice obtains in sheriffs' offices generally throughout the State. In a matter of so much public importance as tax sales, a record in writing in each case should be kept by tax collectors of how and when, the manner, etc., of giving notice of delinquency to tax debtors, and officially signed. And if this record does not make proof of its recitals, as does the return of the sheriff on a citation, it could be given that effect by legislation.

That portion of the tax rolls of Ouachita parish containing the assessment against J. T. Bryant was brought up in the original, and opposite his name. appears no check mark, while under his name appears these words written with a lead pencil: "Belongs to C. D. Mathews, Hillsboro, Texas."

This entry or memorandum is shown to be in the handwriting of the then sheriff. There is evidence going to show that while the title of record was in Bryant he was not in fact the real owner of the property, though that circumstance has no bearing on the case. It suffices that he held the legal title of record. Having it, the property was properly assessed to him and he was the party to whom the notice should be given.

It might be inferred from the sheriff's memorandum, as above, that he refrained from giving notice of delinquency to Bryant because he had learned he was not the owner. But the court does not permit itself the latitude, and the law does not sanction it, of drawing inferences to overthrow tax titles.

Nor is it necessary here.

Undoubtedly, a check mark, such as that shown by the testimony to indicate that notice of delinquency had been mailed, had once been made opposite Bryant's name and afterwards erased. The erasure is plainly visible. Who made it and when made, who erased it and when erased, does not appear, and if that were all, we would not consider the *prima facie* validity of the sale had been affected.

But there appears the testimony of Trimble and Stubbs, who, in the spring or summer of 1899 before this suit was filed, examined the tax rolls with reference to the assessment of Bryant. Both testify that at that time there was no check mark either before or after the name.

Trimble was the owner in part of mortgage notes affecting the property, and if the sale to the State was a valid one his security was lost. Stubbs was employed as attorney to give an opinion as to the validity of this sale, and, it seems, finding there was wanting on the records the usual evidence that notice had been given to the tax debtor, he advised his clients the sale would not hold.

Both testify that neither did they notice, in their examination, the erasure which now appears upon the roll. Both were looking for the check mark, and so plain is the indication now upon the roll of a former check mark and its erasure, that had the erasure been there at the time of their examination it must needs have been seen. To that effect is their testimony.

The evidence of these witnesses, together with the testimony of Bryant that he did not receive the notice, we think, taken in connection with the tax roll, establishes that the record kept by the former sheriff,. indicating to what delinquents notice had been mailed, fails to show the sending of the required notice to Bryant, and that this is sufficient to rebut the presumption of regularity of the tax sale and of its *prima facie* valid character, invoked by plaintiff, and to throw upon the latter the burden of sustaining the tax title by testimony *aliunde* the deed.

This has not been done.

Judgment affirmed.